[Filed 1888.]

## SHADDEN v. HEMBREE.     PARRIS v. HEMBREE. HEMBREE v. SHADDEN.

WILLS — CONSTRUCTION — INTENTION OF TESTATOR. — In the construction of a will, under the laws of this state, due regard must be had to the directions contained therein, and to the true interests and meaning of the testator in all matters relating thereto; and when a clause in the will provides, in general terms, for the limitation over of the devise to a second taker upon a contingent event, the intention of the testator, as indicated by all the parts of the will, must determine when and under what particular circumstances the contingency arises.

CONSTRUCTION — NATURE OF ESTATE. — Where H. made his will, in which he devised his farm to his son, and certain town property to his wife, and directed that the wife should have the use, control, and management of all his property, both real and personal, during her natural life, or so long as she remained his widow, and then it should go to the son, except as therein provided; and by a subsequent clause in the will it was directed that, in the event that his wife and son should both die before the son became twenty-one years of age, then that his real estate should descend to his nephew, to whom he devised it in the event mentioned, and that his personal property should be divided among the brothers and sisters of himself and wife: *held*, that the will created a life estate in the wife, remainder

in the son, and a limitation in the nature of an executory devise in the nephew; and that upon the happening of the contingency upon which the limitation over to the nephew was made to depend, the title of the real property vested in him, or in his heirs in case of his death; *held, further,* however, that the clause in the will creating the contingency must be construed with reference to other parts of the will; and if it appeared therefrom that it was the intention of the testator that the limitation over was only to take effect in the event of the wife and son dying within the time referred to, and of the nephew being alive, to take the property at the time of the death of the wife, the will should be construed in accordance with such intention.

ID. — And where it appeared that the nephew died first, the wife subsequently, and that the son survived the latter, *held,* that the contingency upon which the limitation depended did not happen, that the son took the real property in fee, and upon his death, it descended to his heirs, under the laws of the state governing descents, and that the heirs of the nephew had no claim upon it.

CONSTRUCTION — NATURE OF ESTATE — CONTINGENT REMAINDER. — *Held, also,* that if the limitation over had been by way of contingent remainder, instead of executory devise, the result would have been the same; that they both depend upon a contingency which must occur before they can take effect, and that when the happening of the contingency becomes impossible, the estate in the first taker, under the will, becomes absolute.

DESCENT AND DISTRIBUTION — DESCENT OF PROPERTY TO GRANDPARENTS. — *Held, also,* under the particular circumstances of these cases, that the son having died leaving no child, wife, father, mother, sister, or brother, or issue of any brother or sister, the estate descended to his grandmother on his father's side, and his grandfather and grandmother on his mother's side, in equal shares to each.

APPEAL from the Circuit Court for Lane County.

*Washburn & Woodcock,* and *L. Bilyeu,* for Respondent.

*Fenton & Fenton,* and *J. E. Fenton,* and *McCain & Hurley,* for Appellant.

THAYER, J.—These three cases, two of them appeals from the circuit court for the county of Lane, and third an appeal from the circuit court for the county of Yamhill, involve the construction of the last will and testament of Lycurgus Hembree, of which the following is the substance:—

"*First.* It is my will that all my just debts be paid.

"*Second.* I give and bequeath to my son, Henry L. Hembree, my farm, known as the 'Green B. Hayes donation land claim,' in Lane County, Oregon.

"*Third.* I give and bequeath to my beloved wife, Mary M. Hembree, my town property in the town of McMinnville, in Yamhill County, Oregon, one block and a half, situated in Rowland's Addition to the said town.

"*Fourth.* It is my will that my beloved wife shall have the use, control, and management of all my property, both personal and real, during her natural life, or so long as she remains my widow, and then the said property shall all go to my son, Henry L. Hembree, except as herein provided.

"*Fifth.* I give and bequeath to my nephew, Frank M. Shadden, one tenth of all my personal property outside of my real estate, the said one tenth to be given to him when he is twenty-one years of age.

"*Sixth.* It is my will that in the event that my beloved wife and son, Henry M. Hembree, shall die before my son shall become twenty-one years of age, that it is my will that my real estate shall descend to my nephew, Frank M. Shadden, and in the event mentioned, I do so will and bequeath the same to him; and it is my will, further, in the event just mentioned, — the death of my wife and son, — that all my personal property shall be equally divided; one half descend to my brother, I. N. Hembree, my sisters, Louisa Preston, and Lousetta Preston, and Elizabeth A. Montgomery, each to have equal shares, and the other half to my beloved wife's brothers and sisters, each to have an equal share.

"*Seventh.* It is my will and earnest request that my son, Henry L. Hembree, be thoroughly educated, so far as he will receive an education.

"*Eighth.* I hereby appoint my beloved wife my sole

executrix, and it is my will and request that she be not required to give bonds in administering on my estate.

"In witness whereof, I hereunto set my hand and seal this eighth day of November, A. D. 1875.

"LYCURGUS HEMBREE.   [Seal.]"

The testator died March 31, 1876, leaving his wife and son surviving. The will was duly admitted to probate July 3, 1876, and thereupon the executrix named therein duly qualified. The said Frank M. Shadden, named in said will, died in September, 1879, leaving his sister, Ellen Bell, his only heir at law.

The said Mary M. Hembree, widow of said testator, died July 4, 1880, leaving the said Henry Leon Hembree her only heir at law; and the said Henry Leon Hembree died on the thirty-first day of March, 1884, leaving his grandmother, Malinda Parris, on his father's side, and his grandfather and grandmother, T. J. Shadden and Martha Shadden, on his mother's side; also said I. N. Hembree, Louisa Preston, Lousetta Preston, and Elizabeth A. Montgomery, his uncles and aunts, on his father's side; and also certain uncles and aunts on his mother's side; but he left no wife nor child, and died a few months before he had reached the age of twenty-one years.

The administration upon the estate was closed November, 1885, and the real property mentioned in the will, or the greater part thereof, relieved therefrom.

It seems that the main contention in regard to the property is between the brothers and sisters of the testator on the one side, and the grandparents of said Henry L. Hembree, and those claiming under them, on the other.

The Yamhill County case was an action by the appellant therein, I. N. Hembree, to recover the possession of the block in the town of McMinnville mentioned in the will. This was the commencement of the litigation involved therein.

XVII. OR.—2

The said I. N. Hembree alleged in his complaint that he and the three sisters named were the owners each of an undivided fourth interest in said premises as tenants in common; that he was entitled to the possession thereof; and that the respondent, Henry C. Shadden, wrongfully withheld the same.

The said respondent denied the allegations of the complaint, and alleged title in fee to the premises in himself, claiming under the said will of Lycurgus Hembree remotely, and directly under a will of said Mary M. Hembree. The action was tried before Hon. R. P. Boise, judge of the circuit court for that county, upon an agreed statement of the facts.

Said court found that, under the provisions of the said will of Lycurgus Hembree, the said premises, on the death of said testator, became vested in the said Mary M. Hembree for life, remainder to said Henry L. Hembree, and a contingent estate therein to said Frank M. Shadden; and that, upon the death of the latter, his contingent estate lapsed, and vested in Henry L. Hembree; and upon the death of Mary M. Hembree, the whole title vested in him; and that upon his death, it vested in the said three grandparents in common, one third to each. Subsequently, the Lane County cases were commenced.

The appellants Henry C. Shadden and Malinda Parris brought separate actions to recover the possession of undivided portions of the said Green B. Hayes donation land claim. Said Henry C. Shadden claimed an undivided two-thirds interest therein under a deed to him from the said Thomas J. Shadden and Martha Shadden, executed on the twenty-fourth day of April, 1886, and the said Malinda Parris claimed an undivided one-third interest therein as heir at law of the said Henry Leon Hembree.

The respondent, said I. N. Hembree, defendant in each of said actions, claimed therein that he and his aforesaid

sisters were owners in fee of the said donation claim as tenants in common, each of an undivided fourth interest. Said action was tried before the Hon. R. S. Bean, judge of the circuit court for Lane County, without a jury, who found that the title to the land claim, on the death of Lycurgus Hembree, under the provisions of said will became vested in Mary M. Hembree for her life, defeasible on her marriage, with a vested remainder in fee in Henry L. Hembree, coupled with a conditional limitation; that on the death of said Mary M. Hembree, said Henry Leon Hembree took the title to said premises in fee, coupled with a conditional limitation; that on the death of said Henry Leon Hembree, the title to said premises became vested in the heirs of Frank M. Shadden.

The learned judges of the respective circuit courts evidently undertook to construe the will in question by applying the technical rules of the ancient common law. The one appears to have viewed the instrument as having created in the nephew, Frank M. Shadden, an estate known as contingent remainder, and the other seems to have regarded it as an executory devise, though he uses the term "conditional limitation." And the counsel in the case appears to apprehend that, if the provision in the will in favor of the nephew is construed to be a limitation of an estate to him in the nature of a contingent remainder, the devolution of the estate would be materially different than if construed to be a limitation in the nature of an executory devise. Hence the controversy thus far has mainly involved that question.

Such limitations formerly occupied a prominent place in the divisions of real property into estates. A retrospective view of the customs and laws of our English ancestors in conveying and transmitting real property inclines one to the belief that a grant or devise in that age would not have been regarded in good taste unless so

complicated with conditions and limitations that none but the astute could understand it. Latterly, however, a more simple and practical course in such affairs has been pursued, and the usage of annexing qualifications and contingences calculated to vest, enlarge, or defeat the title dispensed with. This change of custom, I conceive, has also had the effect to incline the courts in construing instruments employed to transfer landed estates to attach more importance to the intention of the parties thereto, though in the interpretation of a devise the intention of a testator always had an important bearing. It was deference to such intention which induced the courts to invent the species of estate known as "executory devise." It differs from a contingent remainder in only a few particulars. It needs no particular estate to support it; a fee-simple or other less estate may be limited on a fee-simple, and a remainder may be limited on a chattel interest after a particular estate for life is created in the same. If the courts had adhered to strict common-law rules, no such estate would ever have been known, unless provided by the proper law-making power.

It is a mistake to suppose that because some particular provision in a will, literally interpreted, would create a certain kind of estate, either present or in expectancy, that therefore the courts must necessarily determine it to be such estate, and construe the instrument accordingly. Our statute provides that "all courts and others concerned in the execution of last wills shall have due regard to the direction of the will, and the true interests and meaning of the testator in all matters brought before them." (Code, sec. 3097.)

Chancellor Kent says that "the intention of the testator is the first and great object of inquiry, and to this object technical rules are, to a certain extent, made subservient. The intention of the testator, to be collected

from the whole will, is to govern, provided it be not unlawful or inconsistent with the rules of law." (4 Kent's Com. *534.)

The testator in this case evidently intended that his son should have the farm in Lane County, and be his residuary legatee, and that his wife should have, during her life, his town property in the town of McMinnville. The second and third bequests in the will were absolute gifts to the son and wife severally of the respective parcels of real property therein referred to, and if there had been no other provisions in the will indicating a different intent, they would each have taken an absolute estate therein.

But the fourth and sixth clauses in the will clearly indicate a contrary intent as to the wife. By the fourth clause he gave her the use, control, and management of all his property, both real and personal, during her natural life; and directed that, upon her death or marriage, it should all go to the son, except as otherwise provided in the will. This exception, I think, refers to the third clause in the will, containing the bequest to the wife of the property, and to the sixth clause thereof, in which it is directed that in the event of the death of the wife and son before the son became twenty-one years of age, the real estate should descend to the nephew, and the personal property should be equally divided, etc.

These various provisions indicate that the gift to the wife of the town property was intended to be only for her life, and that her use, control, and management of the other property would continue no longer than she remained the testator's widow. I think he intended, however, that she should retain the town property during her life, even if she ceased to remain his widow, but that the title thereto should terminate at her death.

The main difficulty in the way to an understanding of

the will is, to ascertain from the inconsiderate language employed in the sixth clause thereof what limitation the testator intended to attach to the devise to his son. If it depended alone upon the question as to whether the limitation was a contingent remainder or an executory devise, it could be easily determined.

A remainder, says a distinguished law-writer, "is defined by Lord Coke (1 Inst. 143 a) to be a remnant of an estate in lands or tenements expectant on a particular estate created together with the same at one time. It follows," he says, "from this definition, that whenever the first fee is limited, there can be no remainder, in the strict sense of the word, for the whole being first disposed of, no remnant exists to limit over. The true point of distinction, as I take it," he says, "between such conditional limitations over as are and such as are not remainders, in the strict sense of that word, lies here: the former are limited to commence where the first estate is, by the very nature and extent of its original limitations, to expire or determine; whereas the latter are limited so as to be independent of the measure or extent originally given to the first estate, and to take effect in possession upon an event which may happen before the regular determination to which the first estate is liable, from the nature of its original limitation, and so to rescind it. And in the latter case, I apprehend it is the same thing whether the whole fee is disposed of in the first limitation or not." (Fearne on Remedies, 4th Am. ed., from 10th Lond. ed., 11–13.) In connection with this, the author gives in substance the following illustration: If an estate is limited to the use of A and his heirs till C returns from Rome, and after the return of C, to the use of B in fee, the whole fee being first limited to the use of A, there is no remnant left to limit over, and consequently the limitation to B cannot be a remainder. But where an estate is limited

to the use of A until C returns from Rome, and after the return of C, to the use of B in fee, here the whole fee is not limited to the use of A, but only a particular estate, to endure till the return of C, which being an uncertain period, such particular estate is a freehold.

Only a particular estate having been limited, extending in its first creation no further than to C's return, the residue of the estate after his return is a remnant of the whole estate in the lands, expectant on that particular estate, which remnant being limited to the use of B, it is a remainder.

There are minor points of difference between a remainder and an executory devise, but they all proceed from the main distinction, as above shown. The consequence resulting therefrom is, that in a devise a fee may be limited to commence *in futuro*, while in a deed it is not permissible. In the present case, the limitation to the son was of an absolute estate. His dying before he reached the age of twenty-one years was the contingency which was to operate to defeat it, in the event the mother also died within that time, and to vest it in the nephew. It could not therefore have been a remainder under the rules of the common law. But I do not see that it makes any difference with the rights of the parties herein which sort of estate it belonged to.

I do not think the theory of counsel that the will created a life estate in the mother, a vested or contingent remainder in the son, a contingent remainder in the nephew, and that when the mother died the whole estate passed to the son, and thereby destroyed the remainder over to the nephew, is tenable. Contingent remainders might be destroyed by some ulterior act, such as the tenant in an estate-tail suffering a common recovery. But they were not suicidal; some extraneous force beyond the regular happening of the contingency had to be employed to

accomplish their destruction. The counsel's theory proves too much.

If, by the terms of the will, the son, upon the death of the mother, became vested with an absolute estate, then, as shown by Mr. Fearne, there could have been no contingent remainder to the nephew, as there was no remainder left to limit over to him. If the nephew, therefore, took any estate under the will, it must have been by way of executory devise. But whichever estate it was, under the view indicated, is immaterial. The one was as effectual to create an estate in Frank M. Shadden as the other, and in itself as endurable. Counsel's contention, therefore, as to which character of estates the limitation to the nephew belonged, is an attempt to make a distinction without a difference.

It is apparent, to my mind, that the language of the sixth clause of the will created an executory devise. It was the limitation of a fee upon a fee, and the only question in the case to be determined is as to what contingency the testator intended to limit upon. The view that the legacy lapsed upon the death of the nephew cannot be maintained. The limitation to the nephew was to prevent the legacy from lapsing. A legacy lapses when the devisees die before the testator, and there is no other person authorized to take it under the will. Nor would the death of the nephew destroy the limitation over, if the contingency occurred limiting the estate to him. In that event it would go to his heirs whenever the contingency did happen, although it might in the mean time have descended to the heirs of the first taker. (*Barnitz's Lessee* v. *Casey*, 7 Cranch, 456.)

The said sixth clause of the will must be read in connection with the second and fourth clauses thereof. Taken together, they are to the same effect,—that the son is given the farm in Lane County specifically, and the mother to

have the use, control, etc., of all the property during her natural life, or so long as she remained the testator's widow, and then it is to go to the son, except that in the event of the death of both wife and son before the latter becomes twenty-one years of age, the real estate is to go (descend) to the nephew, and the personal property be equally divided, etc.

There is a large class of cases in which it is held that where there is a devise to one person in fee, and in case of his death to another, the contingency referred to is the death of the first-named devisee during the life of the testator, and that if such devisee survives the testator, he takes an absolute fee; that the words of the contingency do not create a remainder over, to take effect upon the death, at any time, of the first taker, nor an executory devise, but are merely substitutionary, and used for the purpose of preventing a lapse in case the devisee first named should not be living at the time of the death of the testator; that such is the settled rule where other parts of the will, aside from the words of absolute gift, followed by a gift over in case of death, or death without issue, do not indicate a contrary intention. (*Moore* v. *Lyons,* 25 Wend. 119; *Kelly* v. *Kelly,* 61 N. Y. 47; *Briggs* v. *Shaw,* 9 Allen, 516; *Vanderzee* v. *Slingerland,* 103 N. Y. 47; 8 N. E. Rep. 247; *In re Railway Co.,* 105 N. Y. 89; 11 N. E. Rep. 492.) In the last two cases, however, the court found, in the context of the will, indications of intention which took them out of the operations of the rule.

In *Britton* v. *Thornton,* 112 U. S. 526, 5 Sup. Ct. Rep. 291, the same rule was recognized, but the court there held that the circumstances indicated the death of the first taker at any time, whether before or after the death of the testator, and held that when the death of the first taker was coupled with other circumstances, the devise over, unless controlled by other provisions of the will,

took effect, according to the ordinary and literal meaning of the words, upon death at any time. (112 U. S. 532, 533; 5 Sup. Ct. Rep. 294.) I cannot think that the devise over to the nephew in this case was intended to be dependent upon the contingency of the son's dying during the life of the testator, though there may be nothing in the context of the will showing to the contrary, nor any reason why it does not come within the rule laid down in the above cases. I cannot see how the testator could have apprehended the happening of the contingency within his lifetime. But the will cannot, it seems to me, be read without the impression that he only intended to give the property to the nephew in the event that the latter survived the son. It is very evident that if he had conceived the idea that the son would survive the nephew, the limitation would not have been created. It would be preposterous to suppose that the testator had in view any direct intention of changing the course of descent of his property, or that he would have inserted the provision included in said sixth clause of the will if he had anticipated the sequel. It is clearly manifest from that instrument that the testator intended that his property should go to his son, if alive at the death of his wife; and that if he should die before he became twenty-one years of age, and the wife should also die within that time, it should go to the nephew; and that the limitation to the latter was a mere alternative.

The testator would not certainly have created it if he had not expected that the nephew would be alive when the contingency happened. There is no reason shown or circumstances indicating why the property should have been intended for the nephew dead any more than for the son dead. If the testator had desired it to go to the heirs of the former, he would very likely have had them nominated in the will, although it were not strictly

necessary in order to pass the fee. The devise to the nephew was evidently intended as a personal bequest to him alone, prompted, as it would seem, by some special regard which the testator entertained for him, next to that which he had for his son. The intention which the testator had in mind in regard to the affair is obvious. The wife was to have the use, control, and management of the property during her life, if she remained his widow; then it should go to the son, if alive, but if he were dead, and had not become twenty-one years of age at the time of his death, and the death of the wife also occurred before the son would have reached that age, the nephew should be substituted in place of the son, and receive the legacy. It was intended that the legacy should be given the nephew only in case the mortality of the three took place in the inverse order from which it occurred in fact.

The limitation to the nephew was in the event that the son died first, the wife subsequently, and they both died before the son would have arrived at the age of twenty-one years, if he had lived. The case is very analogous in principle to that of *Wolfe* v. *Van Nostrand,* 2 N. Y. 436. There a testator gave his personal estate to his wife, also his real estate in fee, except two lots of land in the city of New York. Those parcels he devised to his wife for life, and after her death, in case his daughter Elizabeth (his only child) should die without having married, or without leaving any child or children, one parcel to his nephew William, and the other to his nephew Henry. The daughter survived the mother, but afterwards died without issue. *Held,* that by the will the nephew took contingent remainder in fee, which would take effect only in case the daughter died childless during the life of the widow; that the daughter in the mean time took the fee by descent; and on her surviving the widow, that the remainder fell, and she became entitled to the prem-

ises absolutely. This case, so far as the construction of the will in question is concerned, is an authority in favor of the view herein expressed. The court, however, appears to have been impressed with the belief that there was an important difference between the effect of a limitation by way of a contingent remainder and a limitation by way of executory devise.

The learned judge who delivered the opinion of the court, after referring to the fact of the plaintiff's holding that the nephew took a contingent estate by way of executory devise, of such a construction operating to the injury of the daughter, by cutting down, in effect, her estate from a fee to an estate for life, and against the supposition that the testator intended to benefit the devisee, to the prejudice of his only child, says:—

"Again, the construction of the plaintiff is met and opposed by an inflexible rule of law that a future interest capable of taking effect as a contingent remainder shall never take effect as an executory devise. (Butler's Fearne on Remedies, 387, and note.) The limitation to William Newton could take effect as a remainder according to the view suggested. . . . . In a doubtful case we ought rather to incline to the construction that will give effect to the devise according to the rules of the common law than that which requires a resort to the extraordinary methods of executory devise."

What difference the learned judge supposed existed between the effect of the respective limitations, I am unable to perceive. He demonstrates in the opinion that the testator in the will intended that the contingency upon which the estate was limited to the nephew—the daughter's dying childless—must take place previous to the death of the mother, and he construed the will in accordance with such intention. Read in the light of surrounding circumstances, it had to be interpreted the

same as though it contained an express provision to that effect.

The estate, therefore, would not vest in the nephew unless the contingency happened as mentioned. How, then, could it make any difference whether the limitation over was a contingent remainder or an executory devise? The contingency would not arise in either case unless the daughter died childless before the mother; and as the former outlived the latter, the event upon which the estate was to pass to the nephew never happened, and after the death of the mother, became impossible. The limitation over was defeated, and the estate necessarily remained in the daughter and her heirs. So, also, in this case, if the event provided in the will as the termination of the estate in Henry L. Hembree, and the vesting of it in Frank M. Shadden, never occurred and can never occur, the estate must remain forever in the heirs of the former.

In the two cases given by Mr. Fearne illustrating where a limitation over is a contingent remainder, and when the limitation over can only take effect as an executory devise, — the one where there is a limitation to the use of A until C returns from Rome, and after his return, to the use of B in fee, which created a contingent remainder in B; the other where the limitation is to the use of A and his heirs till C returns from Rome, and after his return, to the use of B in fee, which, being an attempt to limit a fee upon a fee, could only take effect as an executory devise, — they both, I apprehend, would stand upon the same footing should C die at Rome, thereby rendering his return an impossibility. That occurrence would unfetter the estate, and the remainder would fall, and the devise over fail.

If I am correct in the view that Lycurgus Hembree intended that the property in question should go to Frank

M. Shadden only in event that Henry L. Hembree died during the life of his mother, and that Shadden should be living at the time of the occurrence, then the contingency upon which the limitation over was made to depend never happened; and whether the limitation over was a contingent remainder or an executory devise is of no consequence, as neither could ever become operative unless the event transpired upon which it was made to depend. Under that view, the said property would not go to the heirs of the nephew, but to the heirs of the son. As to who are the heirs of the latter, presents another question for our consideration. The finding of Judge Boise upon that question, as before mentioned, is supported by *Knapp* v. *Winsor*, 6 Cush. 156. The supreme court of Massachusetts in that case, in a well-considered opinion delivered by Chief Justice Shaw, held, under a very similar state of facts, that the property went to the grandparents equally; and as the counsel before the court seem to regard that as the correct rule, we are inclined to hold on these appeals accordingly.

Since the foregoing was prepared, Messrs. Washburn, Woodcock, and Bilyeu, counsel for said I. N. Hembree, have furnished the court a brief containing a very able and exhaustive argument in favor of the construction given to the will by the learned judge of the circuit court for the county of Lane. The views of the council upon the question are in harmony with those herein expressed, with the exception that they claim, in effect, that upon the death of the wife and son before the latter became twenty-one years of age, the legacy went to the heirs of the nephew without regard to the relative times of the death of the wife and son, and irrespective of the fact that the nephew himself died long before either of them.

If we were able to conclude that such was the intention of the testator, we should feel compelled to adopt that

view; but the cogent reasons before enumerated convince us that the devise over to the nephew was only intended to take effect in event the son died and the former was left, in which case he would take directly at the death of the wife what otherwise would have gone to the son; that he, if living, would have taken the place of the son dead, but under no other circumstances.