WILLIAM CARLISLE ET AL. v. MRS. S. E. GIBBS ET AL.

Decided November 20, 1909.

### 1.—Evidence—Declarations of Assignor of Land Certificate—When Inadmissible.

Testimony as to the declarations of the assignor of a land certificate, made after the death of the assignee and in the absence of his heirs and assigns and when the assignor was not in possession of the land located by virtue of said certificate, to the effect that the assignment of said certificate by her was in trust, or was intended to convey only an undivided interest in the certificate would not be admissible in evidence in a suit between parties claiming under the assignor against parties claiming under the assignee, for the purpose of showing that the title to the whole of the certificate did not pass by the assignment.   Such declarations are hearsay and self-serving.

### 2.—Same—General Reputation.

The issue being whether or not an assignment of a land certificate, absolute

on its face and for the whole certificate, was intended to be a conveyance in trust or for only an undivided interest in the certificate, testimony as to general reputation in the neighborhood of the land was admissible upon the bare fact that the assignor notoriously claimed the land after it was patented; but testimony as to the opinion of the community in general upon the validity of the assignor's claim was not admissible for any purpose.

### 3.—Presumption of Conveyance—Charge.

In a suit by persons claiming under an original grantee of a land certificate, against those claiming as heirs and assigns of an assignee of the certificate and patentee of the land, a charge upon the presumption of a grant or conveyance prior to the adoption of the common land in Texas, considered and approved.

Appeal from the District Court of Trinity County. Tried below before Hon. S. W. Dean.

*Hill & Hill* and *J. P. Stevenson,* for appellants.—The court erred on the trial in excluding defendants' evidence and not allowing the answers of defendants' witness, W. D. Hood, to be read in evidence (by deposition).

The statement of Polly Ryan to witness W. D. Hood, in explanation of her title, showing how she acquired the land, being consistent, and explaining her long possession of it, and the non-claim of James McKim and his heirs, was part of the *res gestae,* original evidence, and therefore admissible. Carlisle v. Gibbs, 44 Texas Civ. App., 203; Hickman v. Gillum, 66 Texas, 316; Wells v. Burts, 3 Texas Civ. App., 430, 419; Hooper v. Hall, 30 Texas, 159; Walker v. Pittman, 18 Texas Civ. App., 524; Brown v. Kenyon, 108 Ind., 283, 9 N. E. R., 283-284; Darby v. Rice (So. C.), 2 Nott. & McC., 596; Applegate v. McClung, 10 Ky., 304; Cannon v. Stockmon, 95 Am. Dec., 208; Anderson v. McPike, 86 Mo., 293.

On the trial of this case appellants' witness, Mrs. Mary Turner, testified that she resided in Polk County, four miles east of Corrigan; was born in 1843; knew Polly Ryan in her lifetime—she was witness' grandmother. Witness' maiden name was Youngblood; Nancy Youngblood, daughter of Polly Ryan, was witness' mother, and her father was Jack Youngblood. When witness first recollects anything they were living in Polk County, and Polly Ryan was living in, and a member of, the family. When Polly Ryan died witness was twenty years or more of age. Witness has heard her grandmother speak as to the ownership or claim of ownership of the Polly Ryan league. She always claimed it. Witness had heard her mention it time and again, up to the time she died. She always claimed to be the owner of it. Appellants' counsel asked this witness, Mrs. Mary Turner, to state what, if anything, she ever heard her grandmother, Polly Ryan, say about the transfer of her league and labor of land, and to state all that her grandmother said about this, and to whom she assigned or transferred the land, if any one, and what was the consideration. Appellants' counsel expected to prove, and could have proven by this witness, that Polly Ryan told her (Mary Turner) that she, Polly Ryan, had assigned to James McKim one-third of her league and labor of land in consideration of his paying the taxes and keeping up the land.

Appellees' counsel objected to the question, because it sought to elicit an answer from the witness which would be immaterial, irrelevant and hearsay; that anything that Polly Ryan stated to witness about assigning or transferring a portion of the land, showing that she retained the balance, would be self-serving as to Polly Ryan, and not made in the presence of James McKim. The court sustained the objection and ruled that the witness could not answer the question, to which ruling of the court appellants, by counsel, excepted, and saved the issue by bill of exception. We submit that the evidence of this witness, excluded by the court, was, under the facts of this case, admissible, and should have been allowed to go to the jury.

We refer to authorities cited in this brief under our first proposition. Also the following: Res gestae; verbal acts; can not be tied down as to time; the court must judge from all the circumstances of the case. 11 Encyc. Ev., p. 382 (2); Rawson v. Haigh, 2 Bing. (Eng.), 99.

Real test: Whether the declarations concerning all the circumstances was spontaneously made without premeditation, and can be regarded as trustworthy. 11 Ency. Ev., p. 335 (13).

No hard and fast rule can be laid down applicable to each case. The court must determine from the facts. 11 Ency. Ev., p. 321d, and note 2.

The undisputed evidence in this case shows that Polly Ryan and her children actually occupied this land before and after the patent of 1845. That two of her sons, James Ryan and Nathan Ryan, died on the land in 1849. That some of Polly Ryan's grandchildren were born on the land while occupied by her and her children. The admission of James McKim in his deed to G. L. Martin of April 17, 1850, shows that McKim bought of Polly Ryan one-third of her league and labor. James McKim and Polly Ryan's answer in the Jackson suit of November 4, 1852, admits that they owned the land jointly, and that it had been their joint property since May 20, 1838, up to the time of filing their said answer, and since the certificate issued March 1, 1838, and since it was surveyed under the certificate April 13, 1838, and at the time the patent issued October 29, 1845. This statement in their plea is supported by the entire evidence in this case, excepting only the statement of Major McKim that his father claimed the land, which is unsupported by any of the facts in this case. Therefore, the statements of Polly Ryan to her granddaughter Mary Turner concerning her title to and how she acquired the land, are admissible as *res gestae,* and explanatory of her acts and the acts of her children in possession of the land. Brown v. Kenyon, 108 Ind., 283, 9 N. E., 283; Swettenham v. Leary, 18 Hun, 284. We refer to our authorities cited under first proposition.

Because the witnesses in this case stated that it was the general understanding that Polly Ryan and those claiming under her owned the land in question, is no reason why this evidence should be excluded, because, as appellees claim, that title to land can not be proved by statement that the land is owned by Polly Ryan and those under her. We know from common observation in life that land is spoken of as owned by some party who is generally known as claiming it, es-

pecially so when there are no adverse claimants. None of these witnesses were speaking for themselves, claiming that they owned the land; and had they done so, it has been held by the courts, "Whilst the fact that a party asserted that land belongs to her would be no evidence of title, yet it would be the best possible evidence that she claimed it." So, in this case, the general notoriety in the community of the Polly Ryan land, that it belonged to Polly Ryan and those under her is the strongest possible evidence that Polly Ryan and those under her claimed to own the land, and not James McKim or those under him. Western U. Tel. Co. v. Hearne, 7 Texas Civ. App., 70; Hickman v. Gillum, 66 Texas, 316.

It has been held by unquestioned authority that a witness may testify that he had known the lands in dispute for upwards of forty years, and that the general repute as to the ownership was in a certain party, and that the witness had never heard of any claim of title by or under another party named. Schauber v. Jackson, 2 Wend., 19, 20; Abbott's Trial Ev., 2d ed., note 4, page 201.

A deed presumed when the conduct of parties for a long period of time can be reasonably explained only on the assumption that such a deed did exist. In this case the acts of James McKim and Polly Ryan can only be explained upon the presumption that James McKim and Polly Ryan, in some way between themselves, did settle by a deed or parol sale, or in some other way, to show that Polly Ryan was entitled to the land, clear of conflict now in question. Brown v. Oldham (Sup. Ct. Mo., 1894), 27 S. W., 411; 2 Wharton's Evidence, sec. 1338, and note 5; Lawson on Presumptive Evidence, rule 86, p. 475; see also pp. 478, 479; Abbott's Trial Evidence on Facts, 2d ed., pp. 368, 369.

*Andrews, Ball & Streetman, Hayne Nelms* and *Dean, Humphrey & Powell,* for appellees.—The trial court did not err in sustaining the objection of plaintiffs (appellees) to the answers of the witness W. D. Hood, taken by deposition January 17, 1903, when offered in evidence by the defendants, as shown by defendants' bill of exceptions, because the evidence so excluded, being the testimony of W. D. Hood as to statements made by Polly Ryan to him when not on or in possession of the land in controversy, was pure hearsay and inadmissible against the objection made that it was hearsay. Mooring & Lyon v. McBride, 62 Texas, 309; McDow v. Rabb, 56 Texas, 159; Wallace v. Wilcox, 27 Texas, 60; Gilbert v. Odum, 69 Texas, 673; Smith, Adm'r, v. Shinn, 58 Texas, 1; Chamberlain v. Pybas, 81 Texas, 515; Davidson v. Wallingford, 30 S. W., 288; Siebert v. Lott, 20 Texas Civ. App., 191; Abbott's Trial Ev., p. 199; Byers v. Wallace, 87 Texas, 509; Jamison v. Dooley, 98 Texas, 209.

The alleged statement made by Polly Ryan to her granddaughter Mary Turner, at some indefinite time subsequent to the removal by Polly Ryan from the survey of land in controversy, to the effect that she, Polly Ryan, had assigned to James McKim one-third of her league and labor of land in consideration of his paying the taxes and keeping up the land, was no part of the process of acquisition of the land in controversy by Polly Ryan, and said statement was not made at the

time Polly Ryan was acquiring said land, and did not flow immediately out of any act on her part culminating in the acquisition of the land, and it was not, therefore, a part of the *res gestae,* as stated by the appellants in their second proposition to the twenty-second assignment of error.

The court did not err in excluding the testimony offered in the deposition of Elizabeth McCan, Susan Tipton, D. A. Dunlap, Mrs. S. A. Rock, S. M. Rock, Mrs. Polly Hickman, I. O. Stanford and William Clark, as to the general reputation in the neighborhood as to who owned the Polly Ryan survey of land, and that such general reputation was that Polly Ryan and those claiming under her owned said survey; because said testimony was hearsay, irrelevant, immaterial, and it was incompetent in this way to show or divest title to land. Western U. Tel. Co. v. Hearn, 26 S. W., 478; Mooring v. McBride, ·62 Texas, 309; Herndon v. Davenport, 75 Texas, 462; Gilbert v. Odum, 69 Texas, 673; Cullers v. Gray, 57 S. W., 305; Carlisle v. Gibbs, 44 Texas Civ. App., 189; Wharton on Evidence, section 1156.

PLEASANTS, CHIEF JUSTICE.—This is an action of trespass to try title brought by appellees against appellants. The land involved is a part of a survey in Trinity County patented to James McKim, assignee of Polly Ryan. Appellees have a regular chain of title from and under James McKim, and appellants hold a similar chain of title from and under Polly Ryan. The record shows that in 1838 the Board of Land Commissioners for Jasper County issued a certificate to James McKim, assignee of Polly Ryan, for one league and labor of land. Upon this certificate a patent was issued to James McKim in 1845 for a league and labor of land which includes the land in controversy. On December 11, 1846, Polly Ryan conveyed to James McKim a tract of 1,535 acres of land out of the league and labor survey above mentioned. This deed of conveyance was duly recorded in the deed records of Polk and Trinity Counties. Some time prior to April 8, 1848, Hugh Jackson and others filed suit in the District Court of Polk County against Polly Ryan for said league and labor of land, claiming that said survey was in conflict with an older grant owned by plaintiffs. On April 7, 1850, James McKim conveyed to G. L. Martin, an attorney-at-law, the 1,535 acres of the land theretofore conveyed to him by Polly Ryan. The evidence sustains the conclusion that the consideration for this conveyance were services rendered and to be rendered by Martin in defending the Jackson suit against Polly Ryan. On April 8, 1848, Martin filed an answer in said suit consisting of a plea of not guilty and limitation of five years, and on October 10, 1849, filed an amended answer setting up plea of limitation of three years. On October 15, 1851, James McKim entered into a contract with the law firm of Yoakum & McCreary by which he employed said firm to defend the suit of Jackson v. Ryan. This contract contains the following stipulations:

"James McKim has employed Yoakum & McCreary to defend the suit of Jackson et al. v. Polly Ryan for the league and labor of land *lying* in Trinity County, at Ryan's Ferry, and patented to James McKim as assignee of Polly Ryan. Said suit is pending in Polk District

Court, and if the same is decided in favor of the defendant, McKim is to convey to said Yoakum & McCreary for their services one-third of said land so patented, provided the title given to G. L. Martin for one-third of said land is set aside, and for which a suit is this day brought in said court; and if they succeed in gaining the suit against Jackson and others, but do not succeed in gaining the suit against Martin, then said Yoakum & McCreary are to have for their services one-third of the balance, deducting the amount deeded to Martin on the 17th day of April, 1850. But if said Yoakum & McCreary do not succeed in gaining the case of Jackson et al., then they are to have nothing. October 16, 1851, James (his X mark) McKim."

At the October term of the District Court of Polk County an order was made and entered allowing James McKim to make himself a party defendant to the suit before mentioned. On November 4, 1852, the following pleading was filed by the defendants in said suit:

"And now come defendants by leave of the court, amend their answer by stating they own, possess and claim, and have continued to own, possess and claim from the 20th of May, 1838, up to this time, under certificate of James McKim, assignee of Polly Ryan (No. 200), issued by the Comm' of Jasper County, Texas, on the 1st of March, 1838, and under survey made April 13, 1838, and under patent dated 29th Oct., 1845 (copies of which certificate and survey and the patent are filed in this cause), the land set forth and described in said field notes and patent, and still own, claim and possess the same. That the said lands in said field notes and patent so claimed, owned and possessed by them lies entirely without the limits of the county of Polk, and of old Liberty County, and entirely within the county of Trinity, formerly a part of Houston County; that these defendants never did own, claim or possess, and do not now own, claim or possess any part or parcel of the lands claimed by plaintiffs, and lying within the county of Polk, formerly Liberty County, and so defendants say this court has no jurisdiction of this cause," etc.

On the 16th of April, 1852, in a suit brought by James McKim against G. L. Martin to cancel the deed for the 1,535 acres before mentioned, judgment was rendered in favor of plaintiff canceling the deed and reinvesting plaintiff with the title to said land.

In the suit of Hugh Jackson et al. against Polly Ryan and James McKim, judgment was rendered in favor of plaintiffs for a portion of the land covered by the patent before mentioned issued to James McKim, assignee of Polly Ryan. This judgment was affirmed by the Supreme Court February 3, 1854. After the affirmance of the judgment, the patent issued in 1845 for the league and labor of land was canceled, and a patent was issued to James McKim for that portion of the land not recovered by plaintiffs in the Jackson suit. This patent was issued June 16, 1854. The land in controversy is a part of the land covered by this patent. Certificates for the unlocated balance of the land called for in the original certificate, after deducting the acreage covered by the patent of June 16, 1854, were issued to James McKim, assignee of Polly Ryan, and were located in Walker, Webb and Jack counties. Patents were issued to James McKim, assignee of Polly Ryan, for the lands located under these certificates,

and said lands were thereafter sold by James McKim. In procuring the certificates for the unlocated balance above mentioned James McKim made and filed in the Land Office the following affidavit:

"The State of Texas, Polk County: Before the undersigned notary public for said State and county this day personally came James McKim and made oath that he claims the certificate for so much of the land lying in Trinity and Polk Counties patented to him as assignee of Polly Ryan as is in conflict with the Jackson claim. That he is the just and legal owner of this certificate; that he did once sell to G. L. Martin one-third of the conflicting land, but said sale was canceled and set aside before said conflict was adjudged by the District Court of said Polk County, and the said affiant is now the sole owner of the conflicting portion, for which he desires the patent canceled because of his having lost it by the decree, a transcript of which has already been forwarded to the General Land Office. (Signed)      James McKim."

On May 3, 1854, James McKim conveyed to Yoakum & McCreary an undivided one-third of all that portion of the McKim league and labor not recovered by plaintiffs in the suit of Jackson against Polly Ryan. James McKim lived in Trinity County, and died there in 1862. On March 4, 1863, Polly Ryan, in consideration of love and affection and of the sum of $5 paid to her by her granddaughter, Mahala Sylvester, conveyed to said Mahala all of the grantor's right, title and interest in the James McKim survey. The land and interest therein conveyed being described in the deed as follows:

"All the right, title, interest, and claim that I may now have in and to the headright league and labor of land originally granted to James McKim, assignee of Polly Ryan, lying and being situated on the Trinity river in Trinity and Polk Counties, near what is known as Ryan's Ferry on said river." The deed also contains covenant of general warranty. Settlements were made on the league and labor of land by several of Polly Ryan's children prior to the issuance of the patent to James McKim in 1845. Polly Ryan had no home of her own on the land, but lived with first one and then another of her children on said survey from the time her children went on the land until about the year 1853. During the time she lived on the land she claimed to own it and her claim of ownership was notorious in the community. After Polly Ryan conveyed to Mahala Sylvester, the latter and her husband claimed the land and for two or three years collected rents from some of the numerous persons who seem to have lived on portions of the land prior to 1884. In 1885 Sylvester and wife sold to C. Lombardi and Edward Haight about 2,200 acres of the land, being that portion of the original survey which was not recovered by plaintiffs in the Jackson suit and which was patented to James McKim in 1854. The appellants have through several mesne conveyances acquired the Lombardi and Haight title. In 1863 T. A. Sylvester, the husband of Mahala, rendered 200 acres of the land for taxes, and in 1873 he rendered 800 acres. After the sale to Lombardi and Haight they rendered it for taxes and their vendees have continued such renditions. James McKim lived and died in Trinity County about ten miles from this land, and it is not shown that he

ever exercised any act of ownership of the land subsequent to his deed to Yoakum & McCreary, but there was testimony from his son, Major McKim, that his father claimed the land. Yoakum & McCreary and those holding under them have rendered for taxes and continuously exercised acts of ownership and asserted claim to the one-third interest in the land conveyed them by James McKim ever since the date of such conveyance.

The first assignment of error presented in appellants' brief complains of the ruling of the trial court in sustaining objections by appellees to the following testimony of the witness, W. D. Hood, which was offered by appellants:

"I heard Polly Ryan make a statement concerning her land certificate for one league and labor of land, a portion of which is involved in this suit. (2) Such statement was made at Mrs. Nancy Youngblood's in the year 1863. (3) T. A. Sylvester, Starling Strange, Nancy Youngblood, her children and myself were present when she made the statement. (4) Polly Ryan stated that the survey of 12,-403,920 square varas located on the Trinity river, partly in Trinity County and partly in Polk County, was her land; I asked her how it could be hers if it had been patented to her brother, James McKim, as her assignee; in reply she said: 'He (referring to James McKim) laid the certificate for me and that is my land, and I have never sold it; he located his part somewhere else.' She repeated this statement a number of times. (5) All that she said concerning her right and title to the land was of the same purport as I have already stated. (6) Nothing was said about transfer of her land certificate, but she insisted all the time that the survey on the Trinity river was hers, and that James McKim located his part somewhere else. (7) Polly Ryan was at the home of her daughter, Mrs. Nancy Youngblood, in Trinity County, Texas, at the time she made this statement. (13) She claimed the land by virtue of her certificate, insisting that her brother had located this survey for her and located his half somewhere else. (15) She stated that her brother, James McKim, had located his half of the land covered by the certificate somewhere else, and that the land involved in this suit belonged to her."

Plaintiffs' counsel objected to the reading in evidence of the above answers of the witness, "because the same is immaterial, irrelevant and hearsay, made when witness was not on or in possession of the land, and because the same is self-serving, and shows a statement of Polly Ryan, as detailed by the witness, made in the absence of and after the death of James McKim, and in the absence of any of his heirs, and because the statement of Polly Ryan could not affect the title or claim of James McKim, his heirs or any one claiming through him or them."

We do not think the trial court erred in the ruling complained of under this assignment. The excluded evidence was clearly hearsay and self-serving, and while our courts have held that self-serving declarations are admissible for the purpose of explaining the possession of the party who made the declaration, and as a circumstance tending to show the execution and delivery of a lost deed, they have not gone to the extent of holding that a declaration by the assignor

of a certificate, made after the death of the assignee, that said assignment was in trust, or only conveyed an undivided interest in the certificate, is admissible in a suit between parties claiming under the assignor against parties claiming under the assignee, for the purpose of showing that the title to the whole of the certificate did not pass by the assignment. The only purpose and effect of this evidence would be to show that the title to the certificate did not pass to McKim by the assignment, and we think it clear that this fact can not be shown by the declaration of Polly Ryan made under the circumstances stated in the assignment. The only material portion of the excluded testimony which was admissible was the statement that Polly Ryan claimed to be the owner of the land, and this fact was shown by other portions of the testimony of this witness which was admitted without objection, and also by the undisputed testimony of several other witnesses for appellants. (McDow v. Rabb, 56 Texas, 159; Mooring & Lyon v. McBride, 62 Texas, 309; Gilbert v. Odum, 69 Texas, 673; Chamberlain v. Pybas, 81 Texas, 515; Siebert v. Lott, 20 Texas Civ. App., 191; Byers v. Wallace, 87 Texas, 509.)

What we have above said disposes of the question presented by the next assignment, which complains of the refusal of the court to permit appellants to prove by the witness Mary Turner statements made by Polly Ryan as to what interest in the league she had assigned to James McKim and the consideration for such assignment. This offered testimony was properly refused on the grounds that it was hearsay and the declaration of Polly Ryan was self-serving and therefore inadmissible.

The next eleven assignments presented in the brief are grouped, and each complains of the refusal of the court to permit appellants to introduce testimony to the effect that it was the general reputation in the neighborhood of the land that Polly Ryan owned it. Each of the witnesses mentioned in these assignments were permitted to state that Polly Ryan's claim to the land was notorious and was generally known in the neighborhood, and this was as far as they should have been permitted to testify upon this issue. It goes without saying that the opinion of the community in general as to the validity of Polly Ryan's claim was not admissible for any purpose, and the testimony as to the general reputation in the neighborhood as to who owned the land would only be admissible for the purpose of showing the notoriety of Polly Ryan's claim, and, as before said, this fact was shown by undisputed evidence admitted without objection.

The twelfth and thirteenth assignments are without merit. The witness Polly Hickman, having stated that she only knew Polly Ryan claimed the survey in question because she heard her (Polly Ryan's) children say so, the court properly excluded as hearsay the testimony of said witness as to Polly Ryan's claim.

The court gave the jury the following instructions: "You are instructed that by the grant from the State of Texas to James McKim as assignee of Polly Ryan, dated June 16, 1854, in evidence before you, the legal title to the land in controversy was vested in James McKim, and it being admitted that the plaintiffs and the grantors in the deeds to the plaintiff, Mrs. Sallie E. Gibbs, are the heirs and only

heirs of James McKim, deceased, you are instructed to find for plaintiffs herein for the land in controversy, unless you shall find from a preponderance of the evidence in this case that James McKim prior to his death granted, sold or conveyed the same to Polly Ryan; and this is the question for you to determine from the evidence before you; and in this connection you are instructed that prior to and before the 18th day of January, A. D. 1840, lands in Texas, or rights to lands, could be sold and conveyed by parol sale with the same effect as if in writing. The defendants do not offer any direct proof of any such grant, sale or conveyance, but rely upon the facts and circumstances in evidence as sufficient to warrant you in believing that James McKim in his lifetime did grant, sell or convey to Polly Ryan, by parol or written conveyance, the land in controversy, and that if such conveyance was in writing it has been lost, mislaid or destroyed, and upon this issue you are instructed that if you so believe from a preponderance of the evidence, you will find for defendants.

"In arriving at your verdict you will take into consideration all evidence submitted to you under the rulings of the court, and you will, from such evidence, determine whether or not James McKim during his lifetime granted, sold or conveyed the land in controversy to Polly Ryan.

"If you shall believe, by a preponderance of the evidence, that James McKim prior to his death granted, sold or conveyed the land in controversy to Polly Ryan, then you are instructed that the legal effect of the deeds and conveyances in evidence before you under which defendant, Wm. Carlisle & Company, claim, would be to put the legal title in said defendant, Wm. Carlisle & Company; but unless you so find that James McKim prior to his death granted, sold or conveyed to Polly Ryan the land in controversy, such deeds and conveyances would have no such effect.

"If you find, from a preponderance of the evidence, that James McKim prior to his death granted, sold or conveyed the land in controversy to Polly Ryan, you will find for the defendants, Wm. Carlisle & Company, and the form of your verdict should be: 'We, the jury, find for the defendants, Wm. Carlisle & Company, for the land in controversy.'

"But if you do not find from a preponderance of the evidence that James McKim before his death granted, sold or conveyed the land in controversy to Polly Ryan, then you will find for the plaintiffs, and the form of your verdicts should be: 'We, the jury, find for the plaintiffs for the land in controversy.'

"You are the exclusive judges of the facts proved, of the credibility of the witnesses and of the weight to be given to the testimony, but the law you will receive from the court, which is herein given you in this charge, all parts of which are to be construed and taken together, and you are to be governed thereby.

"Let your verdict be signed by your foreman, whom you will select in your retirement."

The court gave special charge No. 15, asked by the defendants, as follows:

"The jury are instructed that the presumption of a grant may arise

from long and uninterrupted possession where possession is consistent with such presumption, and the jury may properly find, if warranted by the evidence, that a grant or conveyance of land is presumed.

"And if in this case you find from a preponderance of the evidence that the land in controversy was first entered and claimed by Polly Ryan, and that prior to March 1, 1838, she assigned her certificate or right thereto to her brother, James McKim, who located the same as such assignee and afterwards secured the patent thereto as such assignee, and that after the year 1838 Polly Ryan with her family entered and took possession of the lands in controversy herein and continued to possess and occupy the same with her family and those claiming under her to the year 1852, and that such possession was open, exclusive and notorious, and that during all the time since the date of such assignment of said certificate the said Polly Ryan and those claiming under her have openly, continuously and notoriously asserted and claimed title to the lands in controversy herein, and have possessed and occupied such premises either by herself or those claiming under her, and that during all such time neither James McKim, his heirs, nor any of the persons claiming by, through or under him have openly, notoriously and continuously asserted or made any claim of title · or ownership of · the lands in controversy herein, then you would be authorized to presume that a grant or conveyance either made in writing or verbally prior to January 18, 1840, or by conveyance in writing since that date and now lost or destroyed, was made by the said James McKim, and if you so find and presume that such grant or conveyance was made, then the defendants, Wm. Carlisle & Company, are the legal owners of the title to the premises involved in this action by continuous and uninterrupted claim of title from Polly Ryan, and your verdict should be for the defendants."

We think these instructions covered every phase of the case raised by the evidence and submitted the issues presented by the evidence in a manner most favorable to appellants, and none of the assignments complaining of the refusal to give special instructions requested by the appellants should be sustained.

Upon a former appeal of this case it was held by the Court of Civil Appeals for the ·Fourth District that the answer of James McKim and Polly Ryan filed by their attorneys, Yoakum & McCreary, in the suit of Jackson v. Ryan before mentioned, would not estop James McKim and his heirs from claiming the whole of the land involved in this suit. We would regard that holding as binding upon this court even if we had doubts of its soundness, but we fully concur in such holding. (Carlisle v. Gibbs, 44 Texas Civ. App., 189.)

It would serve no useful purpose to discuss all the assignments in detail. We have duly considered each of them, and none in our opinion present error which would authorize a reversal of the judgment. We conclude that all of the assignments should be overruled and the judgment of the court below affirmed, and it has been so ordered.

*Affirmed.*

Writ of error refused.