### BRITTON & Another v. THORNTON.

IN ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE
WESTERN DISTRICT OF PENNSYLVANIA.

Argued November 26, 1884.—Decided December 15, 1884.

Under a devise to one person in fee, and, in case he should die under age and
without children, to another in fee, the devise over takes effect upon the
death at any time of the first devisee under age and without children.

A testator devised to E, daughter of his son N, a parcel of land in fee, pro-
vided that should E die in her minority, and without lawful issue then

living, the land should revert and become a part of the residue of his estate; devised other land to his son W for life, and to J, son of W, in fee, with a like proviso; gave to his widow certain real and personal property for life; and devised the residue of his estate to his executors, and directed that the income be suffered to accumulate until his eldest grandchild then living should attain the age of twenty-one years, or until the decease of his son W, whichever should first occur, and then the whole to be equally divided among all his grandchildren then living, and in making such division the amount of the devises to J and to E, according to an estimate of their present value, to be made by three appraisers, to be charged to them as part of their respective shares. *Held,* That the estate of E in the land specifically devised to her was devested by her dying under age and without issue, though after the deaths of the testator and of W.

A statute of a State, enacting that two concurring verdicts and judgments in ejectment shall be conclusive of the title, establishes a rule of property in land within the State, and binds the courts of the United States.

Under the statute of Pennsylvania of April 13, 1807, enacting that two concurring verdicts and judgment thereon between the same parties in ejectment shall be conclusive and bar the right, one judgment on a special verdict is not conclusive of any fact found by that verdict; and two verdicts and judgments are not conclusive upon a title not therein adjudicated.

This was an action of ejectment brought on April 12, 1880, in the Court of Common Pleas of the County of Fayette and State of Pennsylvania, by John Russell Thornton, a citizen of that State, against George A. Wilson, a citizen of Ohio, and William Britton and George E. Hogg, citizens of Pennsylvania, his tenants at will; and removed by Wilson into the Circuit Court of the United States for the Western District of Pennsylvania.

At the trial in that court, before a jury, both parties claimed title under the will of Joseph Thornton, who died on October 25, 1839, seized of the land; the plaintiff as his surviving grandchild, and the defendants through Eliza Ann Thornton; and the following facts were admitted:

Joseph Thornton's will, which was duly admitted to probate, besides devising certain real and personal property to his widow for life, directing his executors to pay at their discretion to his son Nelson the sum of $365 a year during his life, and making other devises and bequests, contained the following:

"Item: I give and devise to my son, William S. Thornton,

during his natural life, all that body of land lying in Luzerne Township, Fayette County, on which he now lives, consisting of four parcels adjoining each other, which I purchased of Samuel McMullin, Nicholas Miller, Eliza Coleman, and the heirs of Abraham Merritt, to hold the same without impeachment of waste."

" Item : To my grandson, Joseph Thornton, son of my said son William, I give and devise all the lands in the preceding item devised to his father, to possess and enjoy the same from the death of his father, forever : Provided, that [if] the said Joseph die in his minority, and without lawful issue then living, the said land shall revert and become a part of the residue and remainder of my estate hereinafter disposed of." ,

" Item : To Eliza Ann Thornton, natural daughter of my said son Nelson, I give and devise all that plantation bought of Andrew Porter and John Davis, lying on the Monongahela River, in Luzerne Township, adjoining Eliza Crawford, Thomas Neelan, Joseph Crawford, and Joseph Crawford, Jr., containing, as is supposed, two hundred and sixty acres, besides allowances, be the same more or less, she paying out of the rents to my executors the sum of three hundred and sixty-five [dollars] annually during the life of my said son Nelson : Provided, that should the said Eliza Ann die in her minority, and without lawful issue then living, the land hereby devised shall revert and become a part of the residue of my estate hereinafter disposed of."

" Item : All the rest and residue of my estate not heretofore disposed I give, devise and bequeath to my executors ; and I do hereby authorize and empower them, or the survivor of them or their successors in the said office, to sell and convey any and all of my real estate not herein fully disposed of, if in their discretion they shall think it for the advantage or convenience of my estate, and whenever they may think proper so to do ; and in the mean time to receive the rents, issues and profits of the real estate and the proceeds of the personal and the dividends of all stocks, and apply them to the payment of the legacies of this my will.

" It is my will that the rents, issues and profits of the real estate given to my executors, or the proceeds thereof, if sold, and the dividends of all my estate given to them, or the proceeds, if sold, and the proceeds of all other personal estate not required to pay the debts and legacies heretofore given, be vested by my executors in stocks or put out at interest and suffered to accumulate until my eldest grandchild then living shall attain the age of twenty-one years, or until the decease of my son William, whichever shall first occur, and then the whole to be equally divided among all my grandchildren then living, and the children of any who may be dead leaving issue, such issue to take by representation. The said Eliza Ann, natural daughter of my son Nelson, to be considered a grandchild, and to be entitled to share as such; and in making such division the amount of the devise made to Joseph, son of my son William, and to the said Eliza Ann, according to an estimate of their present value, to be made by three men appointed by my executors or by the Orphans' Court, to be charged to them or their children as part of their respective shares."

William S. Thornton died in 1852, before any of the testator's grandchildren had attained the age of twenty-one years. Eliza Ann Thornton, on January 1, 1856, married John S. Krepps, and died on January 23, 1857, without lawful issue then living, and leaving her husband her heir at law; and he, on November 16, 1872, conveyed the land in dispute to Britton, who, on March 8, 1873, conveyed an undivided half of it to Hogg; and on February 8, 1878, Britton and Hogg conveyed the whole to the defendant Wilson. Krepps died on November 16, 1873. The plaintiff, John Russell Thornton, was the sole surviving grandchild and heir at law of the testator, all the other grandchildren having died without issue.

There was conflicting evidence of the date of Eliza Ann's birth; the evidence for the plaintiff tending to show that it was February 12, 1836; and the evidence for the defendants tending to show that it was February 12, 1835.

The defendants requested the court to instruct the jury that, William S. Thornton having died in the lifetime of Eliza Ann, she, as grandchild of the testator, and by virtue of the residuary

clause in his will, became entitled in fee to the land in dispute, and that the defendants, having succeeded to her title, were entitled to a verdict. The court refused this instruction; and afterwards instructed the jury that the case turned upon their determination of the contested question of fact, whether she died before or after attaining the age of twenty-one years; and that if she died under that age, and the plaintiff was the only living descendant of the testator, he was entitled to recover.

The defendants put in evidence a certified copy of a record of the Circuit Court at May term 1878, of an action of eject- ment between the same parties for the same land, in which a special verdict was returned finding the facts above admitted, and also that Eliza Ann at the time of her death was above the age of twenty-one years, and a judgment was rendered thereon, which was still in force and unreversed. The defend- ants requested that the jury might be instructed that that ver- dict and judgment were conclusive evidence that Eliza Ann was of age at the time of her death, and therefore the verdict in this case must be for the defendants. This instruction was refused.

The defendants then put in evidence a certified copy of a rec- ord of the Court of Common Pleas of Fayette County at March term 1858, of an action of ejectment for the same land, brought by Joseph Thornton's executors against Krepps (under whom these defendants claimed title), by which it appeared that a verdict was returned for Krepps under an instruction of the court that he was entitled to possession as the surviving hus- band of Eliza Ann, and judgment was rendered thereon, which was still in full force and unreversed. The defendants re- quested the court to instruct the jury that the verdicts and judgments in the two cases, records of which had been put in evidence by them, availed in law to conclude the controversy, and the verdict in this case should be for the defendants. The court refused this instruction, because by the record of 1858 it appeared that the only matter determined was that Krepps, as surviving husband of Eliza Ann, took a life estate as tenant by the curtesy; upon any construction of the will of Joseph Thorn- ton, and whether she died under or above the age of twenty- one years.

The defendants excepted to the refusals to instruct and to the instructions given in this case, and, a verdict being returned for the plaintiff, sued out this writ of error.

*Mr. George Shiras, Jr.,* for plaintiff in error.—I. In the proviso to the specific devise the testator was contemplating and providing for the death of Eliza Ann *in his lifetime.* The testator used the same language in the devise to Joseph. It is not probable that he intended that they should take absolute estates in the residuary part of his estate, and defeasible estates in the land specifically devised to them. Our construction gives effect to both clauses of the will. See 3 Jarman on Wills, ch. 48 ; *Doe* v. *Sparrow,* 13 East, 359. Another view is that the testator may have meant the death of Eliza Ann before the time fixed for the division. *Besant* v. *Cox,* 6 Ch. Div. 604 ; *Olivant* v. *Wright,* 1 Ch. Div. 346. The Supreme Court of Pennsylvania was in error in supposing that Eliza Ann died before the time for the division.—II. Not disputing that in Pennsylvania a single verdict and judgment in ejectment is not conclusive as to title, even between the same parties, we contend that the special verdict and judgment were conclusive as to the question of fact, Eliza Ann's age. The general principle is that a point or matter of fact, once adjudicated by a court of competent jurisdiction, may be shown and relied on as an estoppel in any subsequent suit, in the same or any other court, when either party, or the privies of either party, allege anything inconsistent with it ; and this, too, whether the subsequent suit is upon the same or a different cause of action. *Betts* v. *Starr,* 5 Conn. 550 ; *Hopkins* v. *Lee,* 6 Wheat. 109 ; *Outram* v. *Morewood,* 3 East, 346 ; *Aurora City* v. *West,* 7 Wall. 82, 94 ; *Tioga Railroad* v. *Blossburg Railroad,* 20 Wall. 137.— III. Admitting the general rule in Pennsylvania that two successive verdicts and judgments in ejectment in favor of the same party are conclusive, we claim that, if the record discloses, in one of the cases, that the verdict and judgment were obtained because of some fact in the case which was conclusive in that particular case only, then such verdict and judgment *do not count* as against the losing party. The act of April 13, 1807,

by its 4th section provides that two successive verdicts and judgments "shall be final and conclusive and bar the right." Nothing is said in the statute as to the incidents or evidence in the trials. Its terms attribute final and conclusive effect to the verdicts and judgments, regardless of other questions than the identity of the parties and of the causes of action.

Mr. Justice Gray delivered the opinion of the court. He recited the facts as above stated, and continued:

The question which lies at the foundation of this case is what estate Eliza Ann Thornton took in the land which Joseph Thornton specifically devised to her, "provided that, should the said Eliza Ann die in her minority, and without lawful issue then living, the lands hereby devised shall revert and become part of the residue of my estate hereinafter disposed of."

By this specific devise, Eliza Ann Thornton took an estate in fee, defeasible by an executory devise over.

That the estate devised to her, though without words of inheritance, was not an estate for life merely, but was an estate in fee, is not disputed, and is apparent from the description of the subject of the devise as "that plantation bought of Andrew Porter and John Davis;" from the charge, imposed upon her personally, to pay an annuity out of the rents; and from the devise over in the contingency of her dying under age and without issue then living, thereby implying that her estate would not be terminated by her death after coming of age or leaving issue; as well as from the provision of the statute of Pennsylvania of April 8, 1833, that "all devises of real estate shall pass the whole estate of the testator in the premises devised, although there be no words of inheritance or of perpetuity, unless it appear by a devise over, or by words of limitation or otherwise in the will, that the testator intended to devise a less estate." 2 Jarman on Wills (5th Am. ed.) 270, 271, 276, and note 2; Purdon's Digest (10th ed.) 1475, § 10.

It is equally clear that, upon her death under age and without issue then living, her estate in fee was defeated by the executory devise over. When indeed a devise is made to one

person in fee, and " in case of his death " to another in fee, the absurdity of speaking of the one event which is sure to occur to all living as uncertain and contingent has led the courts to interpret the devise over as referring only to death in the testator's lifetime. 2 Jarman on Wills, ch. 48; *Briggs* v. *Shaw*, 9 Allen, 516; Lord Cairns in *O'Mahoney* v. *Burdett*, L. R. 7 H. L. 388, 395. But when the death of the first taker is coupled with other circumstances which may or may not ever take place, as, for instance, death under age or without children, the devise over, unless controlled by other provisions of the will, takes effect, according to the ordinary and literal meaning of the words, upon death, under the circumstances indicated, at any time, whether before or after the death of the testator. *O'Mahoney* v. *Burdett*, above cited; 2 Jarman on Wills, ch. 49.

We find nothing in this will to take the case out of the general rule, or to support the argument of the plaintiff in error that the testator intended that the devise over should not take effect if Eliza Ann survived him, or at least if she survived his son William.

The phrase in the specific devise that, in the prescribed contingency, the land shall " revert and become part of the residue," is quite as consistent with the happening of the contingency after the estate has once vested in the devisee, as with its happening in the testator's lifetime and before any estate has vested in her.

The direction in the residuary clause that the residue shall be divided among all the testator's grandchildren when the oldest living grandchild shall attain the age of twenty-one years, or at the death of the testator's son William, whichever shall first occur, does not necessarily require a single and final division of the whole residue upon the death of William or the coming of age of a grandchild; for either of those events might happen before the termination of the widow's estate for life in that part of the property, real and personal, which upon her death must fall into the residue; and the coming of age of a grandchild might happen during the life of William, to whom also the testator had devised a life estate in other land.

The provision that Eliza Ann, a natural daughter of the testator's son Nelson, shall be considered a grandchild and share as such in the residue, is coupled with a provision that the specific devise to her, according to an estimate to be made of its value, shall be charged to her as part of her share. The reasonable construction of this provision, as both parties agree, is that the estimate made for that purpose shall be of the value of the land devised to her, not of the value of her defeasible estate in the land. By estimating the land at its full value, she would take an equal share with each grandchild in the whole property, if her estate in the land became indefeasible; and she would lose no more than the land, if her estate was defeated by the contingency prescribed in the specific devise, of her dying in her minority and without issue, then living.

By the specific devise, it is only upon that contingency that the land devised to her is to "revert and become a part of the residue;" and, upon a view of the whole will, we are satisfied that the Circuit Court rightly held that she took nothing in this land under the residuary devise, and that her title under the specific devise was defeated by her dying under age and leaving no issue surviving her.

This conclusion accords with that of the Supreme Court of Pennsylvania in an action of ejectment for the same land, brought in 1874 by John Russell Thornton, the present plaintiff, against Britton, one of the grantors of the present defendant Wilson, in which that court, as appears by opinions not officially reported, but copies of which have been submitted to us, held, and, upon petition for reargument, reaffirmed, that, "as to this particular tract of land, the estate of Eliza Ann became extinct, by the terms of the will itself, at the time of her death without issue."

The other questions in the case depend upon the construction and effect of the statute of Pennsylvania of April 13, 1807, by which, "when two verdicts shall, in any writ of ejectment between the same parties, be given in succession for the plaintiff or defendant, and judgment be rendered thereon, no new ejectment shall be brought; but when there may be verdict against verdict between the same parties, and judgment thereon, a

third ejectment in such case, and judgment thereon, shall be final and conclusive, and bar the right." Purdon's Digest, 535, § 15.

This statute, giving a conclusive effect to judgments in ejectment, which they did not have at common law, establishes a rule of property concerning the title in land within the State of Pennsylvania, and binds the courts of the United States as well as the courts of the State. *Miles* v. *Caldwell*, 2 Wall. 35; *Blanchard* v. *Brown*, 3 Wall. 245; *Equator Co.* v. *Hall*, 106 U. S. 86.

By the clear intention of this statute, as by its uniform interpretation by the Supreme Court of Pennsylvania, it requires two concurring verdicts and judgments thereon in a common-law ejectment between the same parties, upon the same title, to conclude the right. The words "the same parties" of course include their heirs or assigns. *Evans* v. *Patterson*, 4 Wall. 224; *Drexel* v. *Man*, 2 Penn. St. 267. An award of referees has been made by the legislature, and a judgment after full hearing upon general demurrer or case stated has been deemed by the court equivalent to a verdict. *Ives* v. *Leet*, 14 S. & R. 301; *Mercer* v. *Watson*, 1 Watts, 330. But in *Mercer* v. *Watson* the court, after full consideration of the terms of the statute and of the reasons for its passage, concluded that "the legislature did not intend to bar the party from bringing a new action of ejectment for the same land, upon the same title, until after two decisions should be had against him upon a full view and consideration of the whole of his case, and all the circumstances connected with it which he might think material, either by two judgments of a court of competent jurisdiction rendered upon general verdicts, special verdicts, cases stated, or in cases of demurrer to the pleadings or the evidence." 1 Watts, 344. And in *Treaster* v. *Fleisher*, 7 W. & S. 137, it was adjudged that, although the statute did not expressly say so, the former verdicts and judgments must have been on the same title; because, in the words of Chief Justice Gibson, "it certainly could not have been intended that a title should be barred by adjudication without having been adjudicated." 7 W. & S. 138. To the same effect are

*Kinter* v. *Jenks*, 43 Penn. St. 445; *Chase* v. *Irvin*, 87 Penn. St. 286; *Barrows* v. *Kindred*, 4 Wall. 399, and *Merryman* v. *Bourne*, 9 Wall. 592.

The special verdict in the former action in the Circuit Court had no greater effect than a general verdict, and could not, consistently with the statute, be held to be of itself conclusive upon the general question of title, or upon any question necessarily involved in the determination of that title.

The verdict and judgment in the former action in the Court of Common Pleas were incompetent evidence under the statute, because, as the bill of exceptions in the present case shows, they did not pass upon the question whether Eliza Ann had an indefeasible title in the land, but only upon the point that her husband had a title by the curtesy therein, whether her title was defeasible or indefeasible. In Pennsylvania, birth of issue is not necessary to create an estate by the curtesy. Purdon's Digest, 806, § 4; *Thornton* v. *Krepps*, 37 Penn. St. 391.

*Judgment affirmed.*