MAULDIN *v.* HOWELL

4-8319                                           205 S. W. 2d 446

Opinion delivered November 10, 1947.

---

*Agnes F. Ashby* and *J. H. Lookadoo,* for appellant.

*Lyle Brown,* for appellee.

ROBINS, J. This suit was instituted in the lower court on November 5, 1946, by appellees, the widow and heirs at law of W. M. Howell, who died intestate in 1932, to cancel a deed executed on March 10, 1928, by said W. M. Howell and wife, conveying approximately 40 acres to appellant. It was alleged that this deed, which had been recorded, was void and that it constituted a cloud on appellees' title.

Appellant in his answer alleged that the deed was executed for a valid consideration, $400 paid by appellant to W. M. Howell, and that appellees had no title to the land.

The cause was tried on oral testimony and the lower court rendered decree sustaining appellees' claim to the land and canceling the deed executed to appellant by W. M. Howell and wife. Appellant asks us to reverse that decree.

The evidence disclosed that W. M. Howell, in 1928, owned the 40-acre tract involved herein, with small tenant house and garden spot located thereon, and that he also owned a farm of about 110 acres adjoining the land in controversy. Appellant had married Mr. Howell's daughter, who later obtained a divorce from appellant, remarried and is now Mrs. Addie Gunn, one of the appellees.

Mr. Howell, being in bad health and unable to cultivate his farm, entered into a written agreement on March 10, 1928, with his son-in-law, the appellant, whereby he rented his farm to appellant for the years 1928 to 1932, both inclusive. In this agreement there were set forth certain undertakings on the part of Howell as to furnishing appellant, and undertakings on the part of appellant to work a "full crop" and to pay a stipulated portion of the crop to Howell each year as rent. The concluding paragraph of this contract was: "And party of second part [appellant] agrees that if he should fail to carry

out the above contract that he will return land deed back to party of the first part [W. M. Howell]. Said land deed being dated March 10, 1928.''

On the same day (March 10, 1928) W. M. Howell and his wife executed a warranty deed, conveying for an expressed consideration of $400 the 40-acre tract in controversy; and this is the deed referred to in the rent contract.

The principal witness for appellees was appellee, Mrs. Addie Gunn, who was appellant's wife at the time of the execution of the rent contract and the deed. She testified that her mother and father were alone except for an invalid sister of witness, her father was an invalid, and her mother was not able to work; that they wanted some one to live on the place, and appellant wished to go back on a farm; that appellant told her father they would remain there as long as her parents lived; that appellant paid nothing to her parents when the deed was executed; that she and appellant "were living from hand to mouth," and appellant had no money at all with which to make such a payment; that her father furnished money to them in accordance with the rent contract, but appellant wasted that money. She also testified that in January, 1929, appellant told her that he was going to leave her and that he did leave her and their child on January 11, 1929; that appellant told her he was going to give the land deed and contract back to her mother; that he wrote her this note some time after he left: "This is to advise you that I am gone. I am writing you this note to let you know I am gone. I decided we could not live together any more as we can't get along. You and the child can have everything except my clothes and Isaac's picture"; that from the time appellant left, up until the time of the trial, her father, mother and she and their tenants had been in possession of the land; that her parents had made similar arrangements with one of her brothers, a brother-in-law and also herself to work the land, but that they had been similarly rescinded by her brother and brother-in-law by turning back to her parents the deeds, and that she

was not claiming sole ownership of the land under her deed; that appellant was present when the deed to the land in controversy, as well as the other Howell land, was executed to her by her mother and her brothers and sisters, and that appellant raised no objection thereto and made no claim to the land.

Appellee, Mrs. W. M. Howell, testified that appellant returned the deed to her about two days before he left home.

Appellant testified that he paid Howell $400 for the land, and denied that he returned the deed to Mrs. Howell. He stated that when he left he told his wife "all I was carrying off was my hunting clothes and my dogs"; that he did not object to the Howells cutting timber on the land involved herein because his wife and child were living on the place. He testified that he signed the rent contract without reading it; that from 1928 to 1944 he did not pay any taxes on the land; that he worked in the sheriff's office part of the time. This occurred in his testimony: "Q. If you had any interest in this 40 acres of land, why didn't you turn to the books and see about the taxes on your land? A. They cut the timber off. I didn't know whether or not it was worth it to pay the taxes. Q. You never did look to see about the taxes? A. No, sir. Q. When was the timber cut? A. I don't know."

There was testimony by other witnesses, but it merely tended to corroborate in some minor particulars that of the witnesses detailed above.

In the trial below the parties and their witnesses testified before the court. The lower court thus had an opportunity to observe their manner and demeanor and to make an appraisal of their testimony that we do not have.

The lower court found that appellant's agreement to cultivate Howell's land for five years was the sole consideration for the execution of the deed; that appellant intended by delivering the deed to re-vest the title

in Howell; that appellant permitted appellees to remain in undisturbed possession of the land, paying the taxes thereon from 1929 to 1944.

While there is some conflict in the testimony, we cannot say that these findings are against the preponderance of the evidence.

Ordinarily, the return of a deed by the grantee to a grantor does not operate to re-vest the title in the grantor. *Campbell* v. *Jones,* 52 Ark. 493, 12 S. W. 1016, 6 L. R. A. 783; *Watters* v. *Wagley,* 53 Ark. 509, 14 S. W. 774, 22 Am. St. R. 232; *Ames* v. *Ames,* 80 Ark. 8, 96 S. W. 144, 117 Am. St. Rep. 68.

But there was shown in the case at bar something more than the mere return of a deed. Here there was a written agreement on the part of appellant to the effect that if he failed to work Howell's farm he would return the deed to the land in controversy. He failed to work the farm rented by him, abandoned the land conveyed to him, and, according to Mrs. Howell, returned the deed to her. He moved away, and for 15 years remained away from the land, permitting timber to be cut and removed from the land and did not have enough concern about the land to ascertain whether anyone was paying the taxes thereon. During this time the daughter of the Howells obtained a divorce from appellant and remarried; and appellant also took another wife.

Now if any meaning is to be given to appellant's agreement to return the deed, in event of his failure to cultivate Howell's land, it must be held to mean that he undertook, in event he did not carry out his contract, that he would surrender the land and all his title thereto back to Howell. His actions indicated that he so interpreted the agreement. He refused to carry out his undertaking to stay and cultivate for Howell his farm for the remaining four years of his term. This agreement on his part was, according to the testimony of Mrs. Gunn, which the lower court accepted as true, the sole consideration for the deed. Hence, it would be inequitable for him to demand a restoration of his deed long after he

had surrendered it and after he had failed to perform the undertakings on his part that caused it to be executed. Dealing with a somewhat similar question, this court, in the case of *Taliaferro, Ex'r., v. Rolton,* 34 Ark. 503, said: "But where such cancellation or surrender has been made under circumstances which would render it a fraud on the part of the holder of the legal title to retain it, such circumstances, for instance, as would render a restoration of the *status quo* impossible, a constructive trust will be adopted as a convenient machinery for the fulfillment of justice, . . ."

We think the rule applicable in the case at bar was aptly stated in the case of *Parker* v. *Parker* (N. J.), 56 Atl. 1094, as follows: (Headnote 1) "Though the surrender or cancellation of a deed by consent of the parties thereto will not divest the grantee of the title conveyed and re-invest the grantor with the legal title, yet where such transaction is had under an agreement, and afterwards acted upon by all the parties in interest, the grantor thereby regains the equitable title to the property, and can compel the grantee in equity to execute a deed of reconveyance."

The decree of the lower court was in accordance with the views expressed above. It is accordingly affirmed.