SIDES *v.* McDONALD.

5-1456 310 S. W. 2d 16

Opinion delivered February 10, 1958.

[Rehearing denied March 10, 1958]

*Rhine & Rhine* and *John C. Watkins,* for appellant.

*Howard A. Mayes,* for appellee.

Minor W. Millwee, Associate Justice. The sole question is whether a deed executed by H. C. Sides, deceased, on September 21, 1944, purporting to convey a 26-acre farm to appellees was ever delivered in the lifetime of the grantor so as to vest title in appellees.

H. C. Sides was unmarried and living alone at Rector, Arkansas, where he died intestate July 14, 1956, survived by one brother, one sister and eleven nieces and nephews, six of whom are the appellees. At the time of his death Sides owned and was in possession of the 26-acre Clay county farm. After his death a committee selected by relatives to examine his effects found a small locked metal box in his trunk in which they found the unrecorded warranty deed conveying the 26 acres to appellees who had it placed of record and went into possession. Appellants, who are the surviving brother, sister and other five nieces and nephews brought this suit to cancel the deed on the ground of nondelivery. This appeal is from a decree finding the deed was properly delivered to appellees in the lifetime of the grantor and dismissing the complaint of appellants.

Since it was conceded in the answer that the deed in question was in the possession of H. C. Sides at the time of his death, the chancellor correctly held a presumption arose that it was never delivered, and that appellees had the burden of proving delivery. *Van Huss* v. *Wooten*, 208 Ark. 332, 186 S. W. 2d 174.

Appellee, Flora Patrick, testified that she and her uncle were very close and lived in each other's homes several times; that prior to the execution of the deed he told appellees he was giving them the farm; and that she visited in his home shortly after the deed was executed. When asked what transpired on that visit, she testified: A. "Uncle Henry gave me the deed and he said, 'Flora, this is a deed to the land that I want you children to have at my death.' He gave me the deed to the land and said, 'This is the deed I am giving you girls and Glen.' That was my brother. I taken the deed and read it and I said, 'Uncle Henry, I have no place to keep it. Will you keep it for us? And you will have

the use of the land as long as you live.' And I thanked him for the deed and handed it back to him. Q. When was the next time you saw the deed? A. Since this lawsuit came up. Q. You were not present at the time it was found? A. No, I was not." She also stated that appellees paid for the drafting of the deed.

Appellee, Cecil Laughlin, testified her uncle was visiting in her home at Paragould, Arkansas, in 1946 or 1947 when he told her to stop by his home the next time she was in Rector. Upon making the visit he gave her the deed saying: "Cecil, here is the deed that belongs to you children." She further stated she took the deed home with her and kept it two or three weeks but, after a discussion of the matter with her brother, another of the grantees, she returned the deed to her uncle for safe-keeping because he kept everything "under lock and key" and she had no lock box in which to keep it. At the time the deed was found in her uncle's lock box by the notary who had drafted it she and other relatives present heard her uncle, Hillard Sides, say: "That's it, that's it. If that is the way he wants it, all right." Mrs. Laughlin's testimony relative to the agreement to return the deed to her uncle for safe-keeping was corroborated by her brother, and the other appellees testified they had known of the execution of the deed for a long time.

In opposition to the foregoing testimony Ray Fryman, son of the appellant, Laura Fryman, decedent's niece, stated he was present when the deed was found and heard Cecil Laughlin say: "I didn't know that Uncle Henry had left us anything." Appellant, Hillard Sides, testified that when the deed was found Cecil Laughlin and her mother, "held up their right hands and swore that they didn't know a thing in the world about it (the deed)." He further stated that Cecil Laughlin and Zenith Shannon, another appellee, had previously gone through the same ceremony on the steps of the hospital on the night of the grantor's death. On cross-examination he admitted his relationship with the grantor and their sister was bad for several years because he felt

they had cheated him out of his part of their father's estate. Cecil Laughlin and others present contradicted Hillard Sides as to the making of these statements and said he advised them to have the deed recorded at the time it was found.

This court has repeatedly approved the following statement from the early case of *Miller* v. *Physick,* 24 Ark. 244: "A deed to be operative must be delivered. The act of signing and sealing gives it no effect without delivery. The delivery is a substantive, specific, and independent act, which may be inferred from words alone, or from acts alone, or from both together, and though there is no particular form in which to make it, still enough must be done to show that the instrument was thereby considered to have passed beyond the legal control of the maker, or his power to revoke it." We, have also said there is no delivery unless what is said and done by the grantor and grantee manifests their intention that the deed shall at once become operative to pass title, and that the grantor shall lose dominion over the deed. *Woodruff* v. *Miller,* 212 Ark. 191, 205 S. W. 2d 181.

It is also well settled that the presumption of non-delivery of a deed, arising from the finding of it among the grantor's effects on his death, is rebuttable by proof of delivery. *Cribbs* v. *Walker,* 74 Ark. 104, 85 S. W. 244. Also, the mere return of a duly delivered deed by the grantee to the grantor does not ordinarily operate to re-vest the title in the grantor. *Mauldin* v. *Howell,* 212 Ark. 268, 205 S. W. 2d 446. Thus, where the grantor executes and delivers a deed to the grantee and afterwards receives it back merely for the performance of some act in connection therewith, the delivery is sufficient. *Brooks* v. *Isbell,* 22 Ark. 488. This rule has been applied in several jurisdictions and the prior delivery held not to have been invalidated where the deed is returned to the grantor for safe-keeping. See cases cited in 26 C. J. S., Deeds, Sec. 42 b.

Whether the deed in question was actually delivered to appellees by their uncle and subsequently re-

turned to him merely for safe-keeping was a sharply disputed question. Most of the witnesses on this issue were interested in the outcome of the suit and the chancellor, who observed them as they testified, was in a much better position than are we to determine their credibility. We cannot say his finding in favor of appellees is against the preponderance of the evidence.

Affirmed.