**Gloria HART et al., Appellants,**

**v.**

**Helen Sue ROGERS, guardian, Appellee.**

**No. 4788.**

Court of Civil Appeals of Texas, Eastland.

Aug. 8, 1975.

Rehearing Denied Aug. 29, 1975.

Joe Bruce Cunningham, Hudson, Keltner, Smith, Cunningham & Payne, James W. Jameson, Puff & Jameson, Fort Worth, for appellants.

Frank L. Jennings, Jennings, Montgomery & Dies, Graham, for appellee.

McCLOUD, Chief Justice.

Plaintiffs, Glenn Moss Rogers and Helen Sue Rogers, Guardian of the Estates of Gregg Allen Rogers and Laura Gay Rogers, minors, sued defendants, Gloria Hart, Kim Franklin, Mike Franklin, Thelma Holt Hart and Neil S. Carlock, Temporary Administrator of the Estate of Don Leander Hart, deceased, in trespass to try title. Both plaintiffs and defendants claim title under the will of Bessie Holt. The property in question is located in Palo Pinto County and will be referred to as the "Brown Place" (consisting of approximately 840 acres), the "Scott Place" (consisting of approximately 991 acres) and the "River Place" (consisting of approximately 2,538 acres). Defendants further claim title to the River Place and Scott Place under two deeds executed by Bessie Holt to Don Leander Hart.

Don Leander Hart, who died on July 12, 1973, without issue, was the grandson of Bessie Holt, who died on September 4, 1966. The property in question was devised to Don Leander Hart under Bessie Holt's will. Plaintiffs, the great-grandchildren of Bessie Holt, contend that when Don Leander Hart died without children the property vested in them.

Bessie Holt was in possession of the property in question exercising all apparent incidents of ownership until her death. The trial court construed the will in favor of plaintiffs and based on findings of the jury held there had been no delivery of the deeds to the River and Scott places.

Defendants have appealed. We affirm.

Bessie Holt's will dated August 5, 1965, provides in part:

"All the rest and residue of my property of whatsoever kind or wheresoever situated of which I may die seized, or possessed of or entitled to, I give, devise and bequeath unto my beloved grandson, Don Leander Hart, of Palo Pinto County, Texas, in fee simple, with the further provision that he the said Don Leander Hart, should precede me in death, *or if he should die without issue leaving no blood descendants the residue and remainder of the property thus conveyed to him by me under this will, shall descend share and*

*share alike to the children of my grand-daughter the said Helen Sue Johnson Rogers, in fee simple."* (Emphasis added)

Defendants argue the will should be construed to mean the gift over to the Rogers children would take effect only if Don Leander Hart should die without issue before Bessie Holt's death. They say the critical point in time at which to determine the devisee of Bessie Holt's residuary estate is at Bessie Holt's death.

 The rule is well established in Texas where the testator vests the first taker with the fee, as opposed to a life estate or term for years, but further provides for a gift over in the event of the first taker's death, and such death is coupled with a contingency which may or may not take place, the gift over, unless controlled by other provisions of the will, takes effect upon the first taker's death at any time, whether before or after that of the testator.

In *St. Paul's Sanitarium v. Freeman*, 102 Tex. 376, 117 S.W. 425 (1909), the will provided:

> "Second. I give and bequeath to Robert M. Freeman, of Dallas, County, Texas, all my property real and personal and mixed, that I may own and be possessed of at the time of my death.
>
> Third. It is my will and desire that in the event the said Robert M. Freeman shall die without issue then it is my will and desire that all of my said property willed as aforesaid be given to St. Vincent de Paul Institution or order, for the benefit of the sick Sisters of that order in Dallas County, Texas."

Freeman sought a construction of the will to determine if his estate was subject to being defeated if he should die without issue. The court said:

> "We recognize the fact that upon this question there is a decided conflict of authority. It seems to us that this conflict is settled in England by the case of *O'Mahoney v. Burdett*, L.R. 7 H.L. 388, in which it is held that 'a bequest to A., and if he shall die unmarried or without chil-

dren to B., is an absolute gift to A., defeasible by an executory gift over in the event of A. dying at any time unmarried or without children.' In the American courts the cases which hold the contrary doctrine are quite numerous. On the other hand, there is a very respectable array of American authority which holds in accordance with *O'Mahoney v. Burdett*, supra. In *Britton v. Thornton*, 112 U.S. 526, 532, 5 S.Ct. 291, 294, 28 L.Ed. 816, Mr. Justice Gray says: 'It is equally clear that, upon her death under age and without issue then living, her estate in fee was defeated by the executory devise over. When, indeed, a devise is made to one person in fee, and 'in case of his death' to another in fee, the absurdity of speaking of the one event which is sure to occur to all living as uncertain and contingent has led the courts to interpret the devise over as referring only to death in the testator's lifetime. 2 Jarman on Wills, c. 48; *Briggs v. Shaw*, 9 Allen (Mass.) 516; Lord Cairns in *O'Mahoney v. Burdett*, L.R. 7 H.L. 388, 395. But when the death of the first taker is coupled with other circumstances, which may or may not ever take place, as, for instance, death under age or without children, the devise over, unless controlled by other provisions of the will, takes effect, according to the ordinary and literal meaning of the words, upon death, under the circumstances indicated, at any time, whether before or after the death of the testator. *O'Mahoney v. Burdett*, above cited; 2 Jarman on Wills, c. 49' And the decision of the case was in accordance with the principles so announced. This decision has been cited and followed in *Summers v. Smith*, 127 Ill. 649, 21 N.E. 191, in *Smith v. Kimbell*, 153 Ill. 378, 38 N.E. 1029, in *Matter of New York, etc., Ry. Co.*, 105 N.Y. 95, 11 N.E. 492, 59 Am.Rep. 478, and in *Shadden v. Hembree*, 17 Or. 25, 18 Pac. 572. To the same effect are *Parish's Heirs v. Ferris*, 6 Ohio St. 563, *Moore v. Moore*, 12 B.Mon. (Ky.) 651, and *Daniel v. Thomson*,

14 B.Mon. (Ky.) 662, to which others might be added.

It follows that in our opinion the death without lawful issue, referred to in the clause of the will, means the death of Freeman at any time, and not his death before that of the testator."

The rule announced above has been followed in *West v. Glisson*, 184 S.W. 1042 (Tex.Civ.App.—Austin 1916, writ ref'd); *Darragh v. Barmore*, 242 S.W. 714 (Tex. Com.App.1922); *Pool v. Sneed*, 173 S.W.2d 768 (Tex.Civ.App.—Amarillo 1943, writ ref'd w. o. m.); *Federal Land Bank of Houston v. Little*, 130 Tex. 173, 107 S.W.2d 374 (1937); and *Austin Presbyterian Theological Sem. v. Moorman*, 391 S.W.2d 717 (Tex.1965). See also Harold Marsh, Jr., *Construction of "Die Without Issue" in Devises of Realty*, 20 Tex.L.Rev. 212 (1941).

*Flores v. De Garza*, 44 S.W.2d 909 (Tex. Com.App.1932); *Bloodworth v. Bloodworth*, 467 S.W.2d 218 (Tex.Civ.App.—Eastland 1971, writ ref'd n. r. e.); and *Harrison v. Brown*, 416 S.W.2d 613 (Tex.Civ.App.1967), *writ ref'd n. r. e. per curiam*, 422 S.W.2d 718 (Tex.1967), relied upon by defendants are distinguishable. In those cases the first taker was granted only a life estate or term for years.

We find nothing in the will under consideration which would remove it from the general rule announced in St. Paul's Sanitarium, supra. We hold the gift over to the plaintiffs took effect upon the death of Don Leander Hart without issue.

The trial court held, based upon jury findings, neither the Scott Place nor the River Place deeds were delivered.

The Scott Place deed was dated August 6, 1956, and acknowledged January 2, 1958. The River Place deed was dated and acknowledged October 1, 1960. Neither deed was filed for record during the life of Bessie Holt.

Special Issue No. 1 reads as follows:

"Do you find from a preponderance of the evidence that Bessie Holt did not place the deed from herself to Don Lean-der Hart dated August 6, 1956, beyond her control with the intention that it become presently operative as a conveyance of the Scott Place?

Answer 'She did not' or 'She did.'

ANSWER: She did not."

Special Issue No. 3 reads as follows:

"Do you find from a preponderance of the evidence that Bessie Holt did not place the deed from herself to Don Leander Hart dated October 1, 1960, beyond her control with the intention that it become presently operative as a conveyance of the River Place?

Answer 'She did not' or 'She did.'

ANSWER: She did not."

Defendants objected to the words "beyond her control" contained in the issues and contend such words gave the jury an improper standard to be used in determining whether there was delivery of the deeds. They argue that delivery is a question of intention on the part of the grantor; that there can be delivery even if no manual delivery of the deed has been made and the grantor retains control of the deed. Defendants also challenge the word "presently" asserting this is an improper standard because a grantor can execute and deliver a valid conveyance to take effect in the future.

In the early case of *Steffian v. Milmo Nat. Bank*, 69 Tex. 513, 6 S.W. 823 (1888), the court said:

"It is elementary law that the delivery of a deed is requisite to its validity as a conveyance. To take effect, it is quite as necessary that it should be delivered as that it should be signed. To complete a delivery in its legal sense, two elements are also essential. The instrument must not only be placed within the control of the grantee, but this must be done by the grantor with the intention that it shall become operative as a conveyance."

The court in *Gilbert v. McSpadden*, 91 S.W.2d 889 (Tex.Civ.App.—Waco 1936, writ ref'd), stated:

"It is also well settled that in order to constitute a delivery of a deed the facts and circumstances in evidence must show an intention on the part of the grantor that the *deed shall presently become operative and effective.* 14 Tex.Jur. 821; 18 C.J. 197; 8 R.C.L. 980; *Cox v. Payne,* 107 Tex. 115, 174 S.W. 817." (Emphasis added)

While discussing the distinction between physical possession of a deed and control over the deed the court approved the following language:

" 'And while the rule that the grantor must part with all dominion and control over his deed does not mean that he must put it out of his physical power to procure repossession of it, nevertheless, if the deed remains within the grantor's control and liable to be recalled, there is, according to almost unanimous authority, no delivery, notwithstanding that he has parted with its immediate possession.' "

 We hold, that in order to constitute legal delivery it is not necessary that a deed be manually transmitted to the grantee, nor is it always necessary that a deed be placed out of the grantor's physical possession, but it is essential that the grantor relinquish dominion and control over the deed. 26 C.J.S. Deeds § 42; 23 Am.Jur.2d, Deeds, § 89; 19 Tex.Jur.2d, Deeds, § 84; 129 A.L.R. 11; 87 A.L.R.2d 787; *Kincheloe v. Kincheloe,* 152 S.W.2d 851 (Tex.Civ.App.—Amarillo 1941, writ ref'd w. o. m.); *Sides v. McDonald,* 228 Ark. 673, 310 S.W.2d 16 (1958); *Dallas Joint Stock Land Bank of Dallas v. Burck,* 102 S.W.2d 1074 (Tex.Civ.App.—Waco 1937, writ dism'd); *Sgitcovich v. Sgitcovich,* 229 S.W.2d 183 (Tex.Civ.App.—Galveston 1950, writ ref'd n. r. e.).

Defendants rely upon *Henry v. Phillips,* 105 Tex. 459, 151 S.W. 533 (1912) and *Taylor v. Sanford,* 108 Tex. 340, 193 S.W. 661 (1917), in support of their contention that it is not essential that a grantor lose dominion and control over a deed. Language sup-

porting defendants' argument is found in the opinions. However, it is clear in both cases the grantor did part with dominion and control over the deeds. In *Eckert v. Stewart,* 207 S.W. 317 (Tex.Civ.App.—Amarillo 1918, writ ref'd), the court, after reviewing *Henry* and *Taylor,* held:

"It is elementary that, in order for a deed to operate as a conveyance, there must have been delivery with the intent and purpose on the part of the grantor to relinquish control of the deed. *Steffian v. Milmo Bank,* 69 Tex. 513, 6 S.W. 823."

Chief Justice Hickman in *Ragland v. Kelner,* 148 Tex. 132, 221 S.W.2d 357 (1949), after citing *Henry* and *Eckert,* said:

"The test established by those cases is whether or not the grantor parted with all dominion and control over the instrument at the time he delivered it to the third person, with intent at the very time of its delivery that it take effect as a conveyance."

We hold the court did not err in overruling defendants' objections to Special Issues 1 and 3, or in refusing defendants' requested special instructions.

Defendants say the court erred in excluding the testimony of Odean Weldon and Jeanne Jenkins that it was common knowledge in the community of Graford that Bessie Holt had deeded some or all of her property to Don Leander Hart.

5 Wigmore on Evidence, 3rd Ed. § 1587, page 556, states it is generally conceded that title cannot be evidenced by reputation evidence; however, there may be cases "in which possession should be thus provable, where adverse possession is to be shown."

Defendants contend a different rule applies in Texas and cite 2 McCormick and Ray, Texas Law of Evidence, § 1322, page 174 which states:

"It is generally held that the application of the present principle is limited to boundaries and that title cannot be proved by reputation evidence, and this is the view of the Court of Criminal Appeals. But no such limitation obtains in

civil cases. *In a number of instances general reputation in the neighborhood as to the ownership of property at the time in question has been received.* This is especially true where the issue is as to whether a person had knowledge of such ownership or claim of ownership." (Emphasis added)

Several of the cases cited by McCormick and Ray support the proposition that general reputation evidence of ownership is admissible to show notoriety of claim, but the cases do not support the proposition that reputation evidence is admissible to show actual ownership of property. The first case cited by McCormick and Ray in support of its statement is *Rice v. Melott*, 32 Tex.Civ.App. 426, 74 S.W. 935 (1903, no writ), an adverse possession case, wherein the witness was permitted to state: "I have always heard it belonged to Frank Egling." The court held that reputation evidence was admissible to show "the openness and notoriety of claim on the part of Egling". The next case cited is *Carlisle v. Gibbs*, 44 Tex. Civ.App. 189, 98 S.W. 192 (1906, no writ), where the court was again speaking of the notoriety of claim. The court said:

"If Polly Ryan lived on the land and laid claim to it, and it was generally known among those living in the vicinity of the land that she claimed the land, it was a circumstance which, taken with the circumstance aforementioned, might show that while the legal title was in McKim, he knew, or ought to have known, that Polly Ryan was asserting title to the land. Also, on the presumption of a grant, or rather proof of a deed by circumstances, *we think general notoriety as to the claims of Polly Ryan to the land should have been admitted.* This principle was established in the case of *Dailey v. Starr*, 26 Tex. 562, where it was held: 'Nor do we think there was error in permitting the plaintiffs below to make proof of the notoriety of their claim of title. Such evidence tended to show acquiescence in their claim by Aranjo and his heirs, and to strengthen the presump-

tion that the title had passed from them.' That authority has ·never been questioned, but has met with approval in a number of cases. *That rule would not justify evidence of general reputation as to the real ownership of the land, but the evidence must be confined to the general notoriety of the claim of Polly Ryan to the land, that being allowable as tending to show that McKim knew she was claiming it.* Rice v. Melott, 32 Tex.Civ.App. 426, 74 S.W. 935." (Emphasis added).

We think *Miller-Vidor Lumber Co. v. Schreiber*, 298 S.W. 154 (Tex.Civ.App.— Beaumont 1927, writ ref'd); *Jackson v. Piper*, 28 S.W.2d 240 (Tex.Civ.App.—Waco 1930, no writ); and *Price v. Humble Oil & Refining Co.*, 152 S.W.2d 804 (Tex.Civ.App. —Dallas 1941, writ ref'd) cited in the McCormick and Ray treatise likewise essentially hold that reputation evidence of ownership is admissible to show notoriety of a person's claim.

In *Carlisle v. Gibbs*, 57 Tex.Civ.App. 592, 123 S.W. 216 (1909, writ ref'd), appellants complained because they were not permitted to introduce testimony that it was the general reputation in the community that Polly Ryan owned the land. The court said:

"Each of the witnesses mentioned in these assignments was permitted to state that Polly Ryan's claim to the land was notorious and was generally known in the neighborhood, and this was as far as they should have been permitted to testify upon this issue. It goes without saying that the opinion of the community in general as to the validity of. Polly Ryan's claim was not admissible for any purpose, and the testimony as to the general reputation in the neighborhood as to who owned the land would only be admissible for the purpose of showing the notoriety of Polly Ryan's claim, and, as before said, this fact was shown by undisputed evidence admitted without objection."

■ We hold that general reputation evidence of ownership is admissible for the limited purpose of showing the notoriety of

a person's claim, *Dominy v. Dominy*, 305 S.W.2d 389 (Tex.Civ.App.—Houston 1957, no writ), but not admissible to show actual ownership. *Green v. City of San Antonio*, 282 S.W.2d 769 (Tex.Civ.App.—San Antonio 1955, writ ref'd n. r. e.) and *McDaniel v. Cherry*, 353 S.W.2d 280 (Tex.Civ.App.—Texarkana 1962, writ ref'd n. r. e.).

■ The testimony of Odean Weldon and Jeanne Jenkins was offered generally and not limited for the purpose of showing the notoriety of Don Leander Hart's claim to the property. The court did not err in excluding the testimony. *Gottschald v. Reaves*, 457 S.W.2d 307 (Tex.Civ.App.—Houston (1st Dist.) 1970, no writ); and *Singleton v. Carmichael*, 305 S.W.2d 379 (Tex.Civ.App.—Houston 1957, writ ref'd n. r. e.).

■ The trial court excluded the testimony of Thelma Hart, mother of Don Leander Hart, that she was present and saw Bessie Holt manually hand the Scott Place deed to Don Leander Hart. Defendants argue that the court erred because the evidence did not concern a transaction with Don Leander Hart. We disagree. Article 3716, Tex.Rev. Civ. Statutes, prohibits an incompetent witness from testifying not only as to statements made by the decedent to the witness, but also as to conversations and transactions which occurred between the deceased and a third party.

The court in *Furr v. Furr*, 440 S.W.2d 367 (Tex.Civ.App.—Fort Worth 1969, writ ref. n. r. e.), stated:

"We hold that the evidence was properly excluded. In *International Travelers' Ass'n v. Bettis*, 120 Tex. 67, 35 S.W.2d 1040 (1931) the authoritative cases up to time of the opinion were cited, all indicated as honoring the decision of *Parks v. Caudle*, 58 Tex. 216 (1882), language from which was quoted, as follows: 'In our opinion, a party is prohibited from testifying, not merely as to statements by the deceased to him, or transactions between him and the deceased, but also as to such statements to or transactions between deceased and third persons, and that, too,

although occurring when the witness had no interest therein. The statute had in view, primarily, a transaction between parties, one of whom had since died, and whose heirs or representatives were engaged in a suit with the survivor. As to such a transaction neither party was allowed to testify. The survivor should not, because the mouth of the other party to the transaction was forever closed. But the heir or representative, if perchance he knew aught of the facts, although it was not a transaction with him, was also forbidden to testify about it; for to allow him to do so, would ·be to give him the advantage over one whose mouth the statute had closed.' (Emphasis supplied.)"

See also *Byers v. Parker*, 16 S.W.2d 1110 (Tex.Civ.App.—Amarillo 1929, writ ref'd).

■ It is also well settled that the term transaction includes a unilateral event where the decedent is the sole participant and the witness merely observes the conduct of or what occurred to the deceased. *International Travelers' Ass'n v. Bettis*, 120 Tex. 67, 35 S.W.2d 1040 (1931).

We have considered all points of error and all are overruled. The judgment of the trial court is affirmed.